Cathy T. MAY, individually and as administratrix of the estate of Timothy L. May, deceased, and as parent and next of kin to Erin L. May, Caroline E. May and Luke J. May, minor children; Jesse Worsham, husband; and Shanda Worsham, wife, Plaintiffs–Appellants and Cross–Appellees,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Defendant–Appellee and Cross–Appellant,

Nationwide Mutual Insurance Company, Defendant.

No. 86573.

Supreme Court of Oklahoma.

April 9, 1996.

Rehearing Denied June 19, 1996.

See also, 39 F.3d 1192, 1994 WL 584577.

Jeffrey A. Glendening, Ann Makela Schneider & Steven W. Simcoe, Barkley, Rodolf & McCarthy, Tulsa, for Plaintiffs–Appellants.

William D. Perrine, Michael F. Smith & Benton T. Wheatley, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, for Defendant–Appellee.

## OPINION

WATT, Justice:

The United States Court of Appeals for the Tenth Circuit has certified the following question of state law to this Court pursuant to the Oklahoma Uniform Certification of Questions of State Law Act, 20 O.S.1991 § 1601, et seq.: '

> Given that uninsured motorist coverage is imputed to the policy at issue as a matter of law according to the facts presented below, what are the limits of the imputed coverage under Okla. Stat. tit. 36 § 3636 as amended September 1990?

## FACTS

The following facts are provided by the federal court. In September of 1991, an automobile operated by an intoxicated driver struck an automobile occupied by Timothy May and Jesse Worsham, killing May and seriously injuring Worsham.[1] At the time of the accident, May and Worsham worked for Gold Bond Building Products and were acting in the scope of their employment for Gold Bond. Gold Bond owned or leased the automobile in which they were traveling. Gold Bond was a division of National Gypsum Company, making it legally the same entity as National Gypsum.

Effective January 1, 1988, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, issued to National Gypsum a business automobile liability policy providing $5,000,000.00 in liability coverage. In March of 1988, National Gypsum's Director of Risk Insurance executed a valid written rejection of uninsured or underinsured motorist (UM) coverage for the company's vehicles in all jurisdictions permitting such a rejection, including Oklahoma. This rejection corresponded with National Gypsum's and National Union's intent throughout the time period relevant to this case that the policy not include UM coverage.

■ From 1988 through 1991, National Union annually reissued the policy to National Gypsum. At National Gypsum's request, the policy as effective January 1, 1989, lowered the liability coverage to $3,000,000.00, where it stood at the time of May's and Worsham's accident. After this material change in or departure from the provisions of the policy, *see Beauchamp v. Southwestern Nat'l Ins. Co.*, 746 P.2d 673, 676 (Okla.1987), National Union did not re-offer National Gypsum UM coverage, nor did it obtain a written rejection from National Gypsum declining such coverage. Therefore, by operation of Oklahoma law, UM coverage was imputed to the policy as of January 1, 1989.[2] *Id.* At no time after the January 1989 renewal and up through the 1991 accident did

---

**1.** The intoxicated driver carried liability insurance at the statutory minimum under Oklahoma Law, $10,000.00 per person and $20,000.00 per occurrence. The Worshams' and Mays' losses exceeded that coverage, and that policy is not at issue in this case.

**2.** We agree with the federal court that the $2,000,000.00 decrease in liability coverage was a "material change" of National Gypsum's policy as contemplated by *Beauchamp*. A material

change or departure from the provisions of an original policy is tantamount to the issuance of a new policy under 36 O.S. § 3636. *Beauchamp*, 746 P.2d at 676. In *Beauchamp*, we held that an insurer's failure to offer UM coverage with a new policy, and the attendant failure to obtain a written rejection required by § 3636(F), results in the inclusion of UM coverage as part of the policy by operation of law. *Id.*

National Union offer National Gypsum UM coverage or obtain from National Gypsum a rejection of UM coverage. The policy was last renewed on January 1, 1991.

The Mays and Worshams sued as beneficiaries of the policy, claiming the imputed UM coverage in effect at the time of the accident equaled the amount of the policy's liability coverage, $3,000,000.00. National Union contends the imputed coverage equaled the statutory minimum for UM coverage, $10,000.00 per person and $20,000.00 per occurrence. *See* 36 O.S.1991 § 3636; 47 O.S. 1991 § 7–204. The district court ruled in favor of National Union. The case is now on appeal to the United States Court of Appeals for the Tenth Circuit.

## DISCUSSION

██ The issue in this case derives from 36 O.S. § 3636, the statute governing UM coverage in the State of Oklahoma. In 1990, the Oklahoma Legislature amended this statute. *See* Laws 1990, c. 297, § 4, eff. Sept. 1, 1990. Neither the pre–1990 version nor the amended version of § 3636 prescribe how much coverage should be imputed in the event an insurer does not satisfy the statute's requirements. The district court held, and National Union urges, that the statutory minimum is the proper imputed amount of coverage. The plaintiffs assert that the imputed coverage should equal the liability limits of the policy. This case presents us with the first opportunity to address the intent of the Legislature as expressed in the 1990 amendments to § 3636 and to explicitly delineate the limits of UM coverage where such coverage has been imputed to an insurance policy as a matter of law.[3]

3. The federal court has not asked us to decide, nor do we express any opinion regarding, whether Nation Gypsum's declared intent to waive UM coverage has any effect upon whether such coverage must be imputed in the policy. The certified question presupposes that UM coverage has been imputed in the policy as a matter of law because National Union failed to offer or obtain a written rejection of the same after the policy was materially changed. This Court has been asked simply to delineate the *limits of coverage* where UM coverage has been imputed.

██ As a preliminary issue, we must determine whether § 3636 as amended in 1990, rather than the pre–1990 version, governs the insurance policy in this case. National Gypsum's policy was issued in 1988 and was renewed annually. The last renewal prior to the September 1991 accident occurred on January 1, 1991. Title 36 O.S.Supp.1990 § 3636, which embraced the 1990 amendments, took effect on September 1, 1990. In *Cofer v. Morton*, 784 P.2d 67, 70 (Okla.1989), this Court held that "[r]ights of recovery under the Uninsured Motorist Act [§ 3636] are governed by the statute in effect on the date of issuance or last renewal of the policy against which an uninsured motorist claim is made." *Accord McSorley v. Hertz Corp.*, 885 P.2d 1343, 1344 n. 1 (Okla.1994); *Uptegraft v. Home Ins. Co.*, 662 P.2d 681, 684 n. 2 (Okla. 1983). As previously set forth, UM coverage was imputed to National Gypsum's policy before the 1990 changes to § 3636. However, the plaintiffs' rights of recovery are governed by the statute in effect on the date of the last renewal of that policy. The version of § 3636 in effect on the date of the policy's last renewal on January 1, 1991, was 36 O.S.Supp.1990 § 3636. Thus, the amount of UM benefits the plaintiffs may recover under the policy is governed by the amended version of the statute.

Prior to its amendment in 1990, § 3636 provided *inter alia* that every automobile liability insurance policy issued in Oklahoma must include provisions for UM coverage; that UM coverage must be in an amount not less than $10,000 per person and $20,000 per accident; that insurers must offer increased limits of UM coverage not to exceed the policy's liability limits; and that insureds had the right to reject UM coverage in writing.[4]

4. Title 36 O.S.Supp.1989 § 3636 specifically provided in relevant part:
 A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.
 B. [Uninsured motorist coverage] shall be not less than the amounts or limits prescribed

This statute was interpreted in *Moser v. Liberty Mut. Ins. Co.*, 731 P.2d 406 (Okla. 1986), as follows:

> This Court has stated that the intent of the uninsured motorist legislation is to afford to one insured under his own liability insurance policy the same protection in the event he is injured by an uninsured motorist as he would have had if the negligent motorist had carried liability insurance. In subsection (B) of section 3636, it is provided that the uninsured motorist coverage provided as a part of a liability policy shall not be less than that required under 47 O.S.1981 § 7–204, with the insured to have the option to purchase increased limits of liability not to exceed the limits provided for bodily injury liability under the policy. Section 7–204 sets the minimum limits of liability coverage required to be carried by all owners of vehicles registered in the State of Oklahoma.

> The purpose of the uninsured motorist provision, when viewed in light of the requirement that it provide minimum standards of protection, is that it place the insured in the same position he would have been in if the negligent uninsured motorist had complied with Oklahoma laws concerning financial responsibility.

*Id.* at 408 (footnotes omitted). *Accord McSorley v. Hertz Corp.*, 885 P.2d 1343, 1348 (Okla.1994); *Mann v. Farmers Ins. Co.*, 761 P.2d 460 (Okla.1988). Similarly, in *Cofer v. Morton*, 784 P.2d 67, 71 (Okla.1989), we stated, "The intent of the legislature as mandated in § 3636(F) is to have a statutory minimum of uninsured motorist coverage in all automobile liability insurance policies unless these minimum amounts are rejected in writing . . . ."

The 1990 amendments to § 3636 made minor changes to subsections (B) and (F) in

> for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47 of the Oklahoma Statutes . . . ; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured.
>
> \* \* \* \* \* \*
>
> F. The named insured shall have the right to reject such uninsured motorist coverage in writing . . . .

ways not relevant here and added subsections (G), (H) and (I). Subsections (G) and (I) are not at issue in this case. The plaintiffs rely on the language of subsection (H) for their argument that imputed UM coverage should be equal to liability limits. Subsection (H) states in relevant part:

> H. The offer of the coverage required by subsection B of this section shall be in the following form which shall be filed with and approved by the Insurance Commissioner. The form shall be provided to the proposed insured in writing separately from the application and shall read as follows:

### OKLAHOMA UNINSURED MOTORIST COVERAGE LAW

> Oklahoma law gives you the right to buy Uninsured Motorist coverage in the same amount as your bodily injury liability coverage. THE LAW REQUIRES US TO ADVISE YOU OF THIS VALUABLE RIGHT FOR THE PROTECTION OF YOU, MEMBERS OF YOUR FAMILY, AND OTHER PEOPLE WHO MAY BE HURT WHILE RIDING IN YOUR INSURED VEHICLE. YOU SHOULD SERIOUSLY CONSIDER BUYING THIS COVERAGE IN THE SAME AMOUNT AS YOUR LIABILITY INSURANCE COVERAGE LIMIT . . . . THE COST OF THIS COVERAGE IS SMALL COMPARED WITH THE BENEFITS!

36 O.S.Supp.1990 § 3636(H) (emphasis in original).

■ Plaintiffs assert that the language in subsection (H) which urges insureds to purchase UM coverage in the same amount as their liability coverage indicates a change in

With the exception of one minor amendment to subsection (C) in 1989, § 3636 remained unchanged between 1979 and 1990.

the legislative intent ascribed to § 3636 by our pre–1990 cases. We disagree. The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in a statute. *Ledbetter v. Oklahoma Alcoholic Bev. Laws Enforcement Comm'n,* 764 P.2d 172, 179 (Okla.1988). In so doing, "relevant provisions must be considered together, where possible, to give force and effect to each other." *Id.* Upon review of § 3636 in its entirety, we do not believe that the addition of subsection 3636(H) signified a change in the legislative intent previously ascribed to the statute.

The 1990 amendments did not alter in any significant respect the basic components of the statute as outlined above. The statute continues to require that every liability insurance policy contain a provision for UM coverage, that UM coverage be offered in amounts between the statutory minimum and the liability limits of the policy, and that the insured has the right to reject UM coverage in writing. We deduce that the newly enacted subsection (H) was created to accomplish two objectives. Primarily, subsection (H) mandates that a standardized written form "shall" be used by every insurer in connection with an offer of UM coverage. The particular form to be used is included in the provision. This legislative mandate appears to have been an appropriate response to the multitude of Oklahoma cases that addressed, under a pre–1990 version of § 3636, insurers' failure to offer UM coverage or obtain written rejection thereof.[5] Subsection (H) also has the objective of encouraging insureds, via the mandatory form, to purchase UM coverage in the same amount as their bodily injury liability limits. In short, the amendment *mandates* the use of a standardized form and *encourages* the purchase of maximum UM coverage. Encouragement and mandate are two entirely different things. Neither the pre–1990 nor amended versions of § 3636 dictate the result plaintiffs seek here.

In his separate opinion in *State Farm Mut. Auto. Ins. Co. v. Wendt,* 708 P.2d 581 (Okla. 1985), Justice Opala described the purpose of § 3636 as it existed in 1981. We believe that his interpretation applies with equal force to the version of § 3636 in effect today:

> The UM statute does indeed contemplate that insureds may need additional coverage. This is doubtless why insurance companies are required to offer increased limits of liability.... If *no* UM coverage at all is desired, named insureds have *the right to reject it* in writing. UM protection is, then, *only conditionally mandated.* Its effectiveness as a public benefit measure is initially controlled by actions of the named insured of the policy.

> While the *general public* is shielded against financially irresponsible motorists by the public liability coverage that is mandated by the Financial Responsibility Act [47 O.S. § 7–204], the UM statute is designed to compel insurers to provide protection only for that insured who wishes not to reject the *minimum* protection against loss occasioned by an uninsured motorist. In short, the former act *commands vehicle owners* to maintain *public liability* protection, while the latter act—a *mandate to insurers*—directs that, absent the insured's written rejection, an *automo-*

5. *See, e.g., Plaster v. State Farm Mut. Auto. Ins. Co.,* 791 P.2d 813 (Okla.1989) (failure to obtain written rejection of UM coverage); *Cofer v. Morton,* 784 P.2d 67 (Okla.1989) (failure to offer increased limits of UM coverage); *Silver v. Slusher,* 770 P.2d 878 (Okla.1988), *cert. den.* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (failure to provide explanation of UM coverage); *Moon v. Guarantee Ins. Co.,* 764 P.2d 1331 (Okla.1988) (failure to offer or obtain written rejection of UM coverage); *Mann v. Farmers Ins. Co., Inc.,* 761 P.2d 460 (Okla.1988) (failure to obtain written rejection of highest available UM coverage limits); *Beauchamp v. Southwestern Nat'l Ins. Co.,* 746 P.2d 673 (Okla.1987) (failure to offer and obtain written rejection of UM coverage); *Moser v. Liberty Mut. Ins. Co.,* 731 P.2d 406 (Okla.1986) (failure to obtain written rejection of UM coverage); *Marshall v. Allstate Ins. Co.,* 805 P.2d 689 (Okla.App.1990) (failure to obtain written rejection of UM coverage); *Prideaux v. Allstate Ins. Co.,* 753 P.2d 935 (Okla.App.1987) (failure to obtain written rejection of highest available UM coverage limits). *See also Robertson v. U.S. Fidelity & Guar. Co.,* 836 P.2d 1294 (Okla.1992), and *Kinder v. Oklahoma Farmers Union Mut. Ins. Co.,* 813 P.2d 546 (Okla.App.1991). Although these two cases were decided after the 1990 amendments were enacted, both opinions addressed an insurer's failure to offer or obtain a written rejection of UM coverage under a pre–1990 version of § 3636.

*bile policy* must *include minimum UM coverage.* The *lone,* though doubtless the *most revealing,* nexus between the two enactments is found in the mention made in § 3636(B) of the *minimum amount* of liability coverage that is mandated by the financial responsibility law. This reference plainly demonstrates a legislative intent to confine the public policy mandate for the statutory UM coverage level to no more than the minimum amount of insurance prescribed by law for public liability protection.

*Wendt,* 708 P.2d at 588 (Opala, J., concurring in part and dissenting in part) (emphasis in original, footnotes omitted).

 An insurance coverage contract required by § 3636 must be liberally construed in favor of the object to be accomplished. *State Farm Auto. Ins. Co. v. Greer,* 777 P.2d 941, 942 (Okla.1989). However, once it appears that the legislative purpose of § 3636 has been served, the statute's mandate is satisfied. *Moser v. Liberty Mut. Ins. Co.,* 731 P.2d 406, 409 (Okla.1986). *See also Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc.,* 747 P.2d 947, 953 (Okla. 1987). "Consequently, freedom-of-contract principles control as to any vehicle coverage *in excess of that required by statute.*" *Equity Mut.,* 747 P.2d at 953 (footnote omitted, emphasis in original).

As previously stated, the legislative intent underlying § 3636 is that every automobile liability insurance policy issued in this state have a statutory minimum of uninsured motorist coverage unless that minimum amount is rejected in writing. That objective was not altered by the 1990 amendments to the statute. Where an insurer fails to offer in writing or obtain a written rejection of UM coverage such that UM coverage is imputed to an insured's policy as a matter of law, we hold that the mandate of § 3636 is satisfied by imputation of the minimum limits of UM coverage required by statute. To impute a higher amount of UM coverage would go beyond the mandate of § 3636.

In *Perkins v. Hartford Underwriters Ins. Co.,* 889 P.2d 1262 (Okla.App.1994), the only other Oklahoma decision to have addressed this issue, the court reached a contrary re-

sult. There, the insureds' automobile insurance policy provided for $100,000.00 per person in liability coverage and $15,000.00 per person in UM coverage. When a third vehicle was added to the policy, thereby creating a new policy, the insurer failed to inform the insureds of their UM coverage options as required by § 3636. The Court of Appeals correctly noted that courts have a duty "to supply, by appropriate pronouncement, whatever procedure may be necessary in order to implement a legislatively-designed remedy that is found procedurally incomplete or deficient." *Id.* at 1262–63, citing *Farris v. Cannon,* 649 P.2d 529, 531 (Okla.1982), and *Moral Ins. Co. v. Cooksey,* 285 P.2d 223, 227 (Okla.1955). The court then summarily concluded that the insurer's failure to reoffer UM coverage resulted in imputation of such coverage in an amount equal to the policy's liability limits, $100,000.00.

The chief problem with the court's rationale in *Perkins* is that § 3636 contains a legislatively created mandate for insurers to use a standardized UM coverage offer form; it does not contain a "legislatively-designed remedy." As we noted at the outset of this opinion, § 3636 has never prescribed the amount of UM coverage to be imputed to a policy when an insurer fails to satisfy the statute's requirements. The remedy of imputing UM coverage to an insurance policy where an insurer has transgressed § 3636 was *judicially crafted* in an effort to fulfill legislative intent. The *Perkins* court never considered legislative intent or the purpose underlying § 3636. For the reasons stated above, we find that the result reached in *Perkins* goes beyond the legislative mandate of § 3636. Therefore, to the extent that it conflicts with this opinion, *Perkins* is expressly overruled.

In the present case National Union, in violation of § 3636, failed to offer or secure a written rejection of UM coverage after National Gypsum effectuated a material change in its insurance policy. Thus, UM coverage was imputed to the policy as a matter of law. The amount of the imputed coverage is dictated by 36 O.S.Supp.1990 § 3636(B) and 47 O.S.1991 § 7–204(a) and equals the statutory minimum of UM coverage prescribed by law

for public liability protection: $10,000.00 per person and $20,000.00 per accident.

CERTIFIED QUESTION ANSWERED.

LAVENDER, SIMMS, HARGRAVE, OPALA and SUMMERS, JJ., concur.

HODGES, J., concurs in result.

KAUGER, V.C.J., concurs in part, dissents in part.

ALMA WILSON, C.J., dissents.

Rehearing Denied June 19, 1996.