**Cathy T. MAY, individually and as administratrix of the estate of Timothy L. May, deceased, and as parent and next of kin to Erin L. May, Caroline E. May and Luke J. May, minor children; Jesse Worsham, husband; and Shanda Worsham, wife, Plaintiffs–Appellants and Cross–Appellees,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Defendant–Appellee and Cross–Appellant,**

**Nationwide Mutual Insurance Company, Defendant.**

**Nos. 94–5173, 94–5181.**

United States Court of Appeals, Tenth Circuit.

May 30, 1996.

---

Jeffrey A. Glendening (Ann Makela Schneider and Steven W. Simcoe with him on the briefs), of Barkley, Rodolf & McCarthy, Tulsa Oklahoma, for Plaintiffs–Appellants and Cross–Appellees.

William D. Perrine (Michael F. Smith and Benton T. Wheatley with him on the brief), of Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, Oklahoma, for Defendant–Appellee and Cross–Appellant.

Before BALDOCK, BRORBY and LUCERO, Circuit Judges.

BRORBY, Circuit Judge.

This cases arises out of an automobile accident. It involves a dispute over whether and to what extent an auto liability insurance policy included uninsured motorist coverage. The district court found the policy included uninsured motorist coverage by operation of Oklahoma law and set the limits of coverage at the statutory minimum of $10,000 per person and $20,000 per occurrence. The plaintiffs appealed, claiming the coverage limits should be higher. The defendant insurance company also appealed, claiming the policy included no uninsured motorist coverage. After preliminarily determining the policy did include uninsured motorist cover-

age, we certified a question to the Oklahoma Supreme Court and asked the court to determine the proper limits of coverage. The Oklahoma Supreme Court recently responded to our question. *May v. National Union Fire Ins. Co. of Pittsburgh, Penn.*, 918 P.2d 43 (Okla.1996). For the reasons given below, we now affirm the district court.

## I. Factual & Procedural Background

The parties submitted this case to the district court on cross-motions for summary judgment. The material facts are not disputed. In September 1991, an automobile operated by an intoxicated driver struck an automobile occupied by Timothy May and Jesse Worsham, killing Mr. May and seriously injury Mr. Worsham.[1] At the time of the accident, Messrs. May and Worsham worked for Gold Bond Building Products ("Gold Bond"), a division of National Gypsum Company ("Gypsum"). Messrs. May and Worsham were acting in the scope of their employment for Gold Bond when the accident occurred, and Gold Bond owned or leased the automobile in which they were traveling.

Effective January 1, 1988, National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), issued to Gypsum a business auto liability policy (the "Policy") providing $5 million in liability coverage. In March 1988, Gypsum's Director of Risk Insurance executed a valid written rejection of uninsured or underinsured motorist coverage for the company's vehicles in all jurisdictions permitting such a rejection, including Oklahoma. This rejection corresponded with Gypsum's and National Union's intent throughout the time period relevant to this case that the Policy not include uninsured motorist coverage.

From 1988 through 1991, National Union annually reissued the Policy to Gypsum. At Gypsum's request, the Policy as effective January 1, 1989, lowered the liability coverage from $5 million to $3 million, where it stood at the time of Messrs. May's and Worsham's accident. After this change in the provisions of the Policy, National Union did not offer Gypsum uninsured motorist coverage, nor did it obtain a written rejection from Gypsum declining such coverage. At no time after the January 1989 renewal and up through the 1991 accident did National Union offer Gypsum uninsured motorist coverage or obtain from Gypsum a rejection of uninsured motorist coverage.

The Policy was last renewed prior to the accident on January 1, 1991. This 1991 version of the Policy erroneously included an endorsement that purported to add uninsured motorist coverage for Gypsum's vehicles in Oklahoma. The endorsement expressly conflicted with the 1991 Policy's declarations sheet, which indicated Gypsum intended to purchase uninsured motorist coverage only in states mandating such coverage.

The Mays and Worshams filed a complaint for declaratory judgment against National Union, asking the district court to determine the extent of uninsured motorist coverage to which they were entitled under the Policy. The parties filed cross motions for summary judgment, contending there were no disputes as to the material facts and the district court could decide all issues as a matter of law. The Mays and Worshams contended the erroneous endorsement to the 1991 Policy resulted in Oklahoma uninsured motorist coverage equal to the Policy's $3 million bodily injury liability limit. In the alternative, they argued uninsured motorist coverage in the amount of $3,000,000 should be imputed to the Policy by operation of Oklahoma law. National Union claimed the Policy did not include any uninsured motorist coverage, and that if it did include such coverage the limit of liability was $10,000. Finding no material facts at issue, the district court addressed the parties' legal contentions. The court concluded: (1) the Oklahoma uninsured motorist endorsement mistakenly attached to the 1991 Policy did not become part of the Policy and the terms of the endorsement had no effect on the dispute; (2) by operation of Oklahoma law, uninsured motorist coverage

---

1. The intoxicated driver carried liability insurance at the statutory minimum under Oklahoma law, $10,000 per person and $20,000 per occurrence. The Worshams' and Mays' losses exceeded this coverage, and this policy is not at issue in this case.

became imputed to the Policy; (3) National Union's liability for the imputed coverage equaled the Oklahoma statutory minimum of $10,000. Both parties appealed. According to the Mays and Worshams, though the district court properly imputed uninsured motorist coverage to the Policy by operation of law, it erred by setting the amount of coverage at $10,000 instead of $3 million.[2] National Union contends the district court improperly imputed uninsured motorist coverage to the Policy.

## II. Applicable Law & Standard of Review

■ The district court's jurisdiction over this matter was based on diversity of citizenship. 28 U.S.C. § 1332. A federal court sitting in diversity applies the substantive law of the forum state. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir.1994). We review de novo the district court's determinations of state law. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991); *Magnum Foods, Inc. v. Continental Casualty Co.*, 36 F.3d 1491, 1497 (10th Cir.1994). Because Oklahoma is the forum state in this dispute, we will apply the most recent statements of Oklahoma law by the Oklahoma Supreme Court. *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 513 (10th Cir.1994). If "no state cases exist on a point, we turn to other 'state court decisions, federal decisions, and the general weight and trend of authority.'" *Barnard v. Fireman's Fund Ins. Co.*, 996 F.2d 246, 248 (10th Cir.1993) (quoting *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir.1988)).

■ We review de novo the grant or denial of summary judgment, applying the same standard used by the district court under Fed.R.Civ.P. 56(c). *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate when "there is no genu-

ine dispute as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## III. Analysis

We begin our analysis with National Union's contention the district court erred by concluding uninsured motorist coverage should be imputed to the Policy by operation law.

■ As we have already discussed, the Policy as effective January 1, 1989, lowered the liability coverage from $5 million to $3 million. After this change in liability coverage, National Union did not offer Gypsum uninsured motorist coverage, nor did it obtain a written rejection from Gypsum declining such coverage. As we explain below, given these undisputed facts, the district court properly imputed uninsured motorist coverage to the Policy.

Okla. Stat. tit. 36 § 3636, as it existed in 1989,[3] required in part that no automobile liability insurance policies "shall be issued, delivered, renewed, or extended in [Oklahoma]" unless the policy included uninsured motorist coverage. Okla. Stat. tit. 36 § 3636(A) & (B). The section provided, however, that insureds could reject uninsured motorist coverage:

> The named insured shall have the right to reject such uninsured motorist coverage in writing, and except that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

*Id.* § 3636(F).

Thus, § 3636 relieves an insurer of its duty to include uninsured motorist coverage in a policy if the insured rejects the coverage in

---

**2.** Recognizing that we might conclude the district erred by imputing coverage, the Mays and Worshams alternatively argue the erroneously included uninsured motorist endorsement operated to include such coverage in the Policy as effective January 1, 1991. As the Mays and Worshams have stated, we are free to disregard this alternative argument, because, as explained below, we conclude the district court properly imputed

uninsured motorist coverage to the policy by operation of law.

**3.** The statute was amended in 1990. *See* Oklahoma Laws 1990, c. 297, § 4, eff. Sept. 1, 1990. The relevance of the § 3636 as amended in 1990 will become apparent below.

writing. If an insurer, however, fails to offer uninsured motorist coverage and does not secure a written rejection of such coverage, uninsured motorist coverage is imputed to the policy by operation of law. *Beauchamp v. Southwestern Nat'l Ins. Co.*, 746 P.2d 673, 676 (Okla.1987). As § 3636(F) indicates, this rule does not apply to "a renewal policy" where the insured has already rejected uninsured motorist coverage. In other words, an insurer's failure, in connection with a renewal policy, to offer uninsured motorist coverage or obtain a written rejection of uninsured motorist coverage from the insured will not result in imputed coverage. *See id.* at 675–77.

The Mays and Worshams contend that the change in liability coverage from $5 million to $3 million in the 1989 Policy constituted a new policy that required National Union to offer uninsured motorist coverage and obtain a written rejection of such coverage from Gypsum. Given that National Union did not do these things, the Mays and Worshams assert the district court properly imputed uninsured motorist coverage to the Policy. National Union claims the 1989 Policy was merely a renewal and that it was not required to offer uninsured motorist coverage because Gypsum had already properly rejected uninsured motorist coverage in writing in 1988. We must decide whether the 1989 Policy constituted a renewal or a new policy.

The Oklahoma Supreme Court provided guidance on this issue in *Beauchamp*, in which it explained:

In 36 O.S.1981 § 3636(F), the Legislature has set forth a narrow pronouncement which relieves insurers from the burden of procuring a written rejection of uninsured motorist coverage whenever an existing policy is renewed. This pronouncement, however, must be viewed in the context of the explicitly announced legislative policy set forth at 36 O.S.1981 § 3636(A) which is that uninsured motorist coverage must be offered with each policy of insurance. To give full effect to the overall policy of section 3636 the provision of subsection (F) must be viewed as strictly limited to true renewals of existing insurance policies, that is, situations where such renewals are

made without effecting a material change or departure from the provisions of the original policy.

*Id.* at 676.

Given the Oklahoma Supreme Court's admonition to read § 3636(F) narrowly, we conclude that the change in liability coverage from $5 million to $3 million in 1989 "effect[ed] a material change or departure from the provisions" of the Policy as originally written in 1988. *Id.*; *see Hartford Accident & Indem. Co. v. Sheffield*, 375 So.2d 598, 600 (Fla.Dist.Ct.App.1979) (holding that when a policy is reissued with significantly lower liability coverage and premiums it is a new policy and not merely a renewal) (cited without disapproval in *Beauchamp*, 746 P.2d at 675 n. 2). In fact, in its response to our certified question in this case, the Oklahoma Supreme Court agreed that the change in liability coverage in 1989 took the 1989 Policy out of § 3636(F)'s renewal exception: "We agree with the federal court that the $2,000,000.00 decrease in liability coverage was a 'material change' of National Gypsum's policy as contemplated by *Beauchamp*. A material change or departure from the provisions of an original policy is tantamount to the issuance of a new policy under 36 O.S. § 3636." *May*, 918 P.2d at 44 n. 2.

Since the 1989 Policy was tantamount to a new policy, National Union was required by § 3636 to offer uninsured motorist coverage and obtain from Gypsum a written rejection of such coverage. Okla. Stat. tit. 36 § 3636. National Union did not satisfy these duties; therefore, the district court properly concluded that uninsured motorist coverage should be imputed to the Policy by operation of law. *Beauchamp*, 746 P.2d at 676.

National Union makes much of the fact that "[t]he intent of the parties here demonstrates that Nation Gypsum wanted to reject [uninsured motorist] coverage in all jurisdictions where rejection is permitted." Though National Union accurately describes Gypsum's intent with respect to uninsured motorist coverage, National Union has not persuaded us that the insured's subjective intent has any bearing on the issue of imputed

coverage. As the Oklahoma Supreme Court has explained:

> [T]he burden of proof is upon the insurer to come forward with a written rejection in order to relieve the insurer from its duty to provide the statutory uninsured motorist coverage. Allegations of oral offers of uninsured motorists coverage fall short of the tenor of proof required by 36 O.S.1981 § 3636, for *there is but one statutorily sanctioned method* by which the mandatory uninsured motorist coverage provided for persons insured under a liability policy may thereafter be rejected.

*Moon v. Guarantee Ins. Co.,* 764 P.2d 1331, 1335 (Okla.1988) (emphasis added).

 We now turn to the issue of how much coverage should be imputed to the Policy. The Mays and Worshams claim the limits of the imputed coverage should equal the limits of the Policy's liability coverage, or $3 million. National Union contends the limits should be set at the statutory minimum for uninsured motorist coverage, or $10,000 per person and $20,000 per occurrence. *See* Okla. Stat. tit. 36 § 3636(B); Okla. Stat. tit. 47 § 7–204(a). In response to our certified question, the Oklahoma Supreme Court resolved this issue in favor of National Union. Below we excerpt a substantial portion of the Oklahoma Supreme Court's opinion:

> As a preliminary issue, we must determine whether § 3636 as amended in 1990, rather than the pre–1990 version, governs the insurance policy in this case. National Gypsum's policy was issued in 1988 and was renewed annually. The last renewal prior to the September 1991 accident occurred on January 1, 1991. Title 36 O.S. Supp.1990 § 3636, which embraced the 1990 amendments, took effect on September 1, 1990. In *Cofer v. Morton,* 784 P.2d 67, 70 (Okla.1989), this Court held that "[r]ights of recovery under the Uninsured Motorist Act [§ 3636] are governed by the statute in effect on the date of issuance or last renewal of the policy against which an uninsured motorist claim is made." *Accord McSorley v. Hertz Corp.,* 885 P.2d 1343, 1344 n. 1 (Okla.1994); *Uptegraft v. Home Ins. Co.,* 662 P.2d 681, 684 n. 2 (Okla.1983). As previously set forth, UM

coverage was imputed to National Gypsum's policy before the 1990 changes to § 3636. However, the plaintiffs' rights of recovery are governed by the statute in effect on the date of the last renewal of that policy. The version of § 3636 in effect on the date of the policy's last renewal on January 1, 1991, was 36 O.S. Supp.1990 § 3636. Thus, the amount of UM benefits the plaintiffs may recover under the policy is governed by the amended version of the statute.

> Prior to its amendment in 1990, § 3636 provided *inter alia* that every automobile liability insurance policy issued in Oklahoma must include provisions for UM coverage; that UM coverage must be in an amount not less than $10,000 per person and $20,000 per accident; that insurers must offer increased limits of UM coverage not to exceed the policy's liability limits; and that insureds had the right to reject UM coverage in writing. This statute was interpreted in *Moser v. Liberty Mut. Ins. Co.,* 731 P.2d 406 (Okla.1986), as follows:

>> This Court has stated that the intent of the uninsured motorist legislation is to afford to one insured under his own liability insurance policy the same protection in the event he is injured by an *uninsured motorist* as he would have had if the negligent motorist had carried liability insurance. In subsection (B) of section 3636, it is provided that the uninsured motorist coverage provided as a part of a liability policy shall not be less than that required under 47 O.S.1981 § 7–204, with the insured to have the option to purchase increased limits of liability not to exceed the limits provided for bodily injury liability under the policy. Section 7–204 sets the minimum limits of liability coverage required to be carried by all owners of vehicles registered in the State of Oklahoma.

>> The purpose of the uninsured motorist provision, when viewed in light of the requirement that it provide minimum standards of protection, is that it place the insured in the same position he would have been in if the negligent unin-

sured motorist had complied with Oklahoma laws concerning financial responsibility.

*Id.* at 408 (footnotes omitted). *Accord McSorley v. Hertz Corp.,* 885 P.2d 1343, 1348 (Okla.1994); *Mann v. Farmers Ins. Co.,* 761 P.2d 460 (Okla.1988). Similarly, in *Cofer v. Morton,* 784 P.2d 67, 71 (Okla. 1989), we stated, "The intent of the legislature as mandated in § 3636(F) is to have a statutory minimum of uninsured motorist coverage in all automobile liability insurance policies unless these minimum amounts are rejected in writing...."

The 1990 amendments to § 3636 made minor changes to subsections (B) and (F) in ways not relevant here and added subsections (G), (H) and (I). Subsections (G) and (I) are not at issue in this case. The plaintiffs rely on the language of subsection (H) for their argument that imputed UM coverage should be equal to liability limits. Subsection (H) states in relevant part:

> H. The offer of the coverage required by subsection B of this section shall be in the following form which shall be filed with and approved by the Insurance Commissioner. The form shall be provided to the proposed insured in writing separately from the application and shall read as follows:
>
> OKLAHOMA UNINSURED MOTORIST COVERAGE LAW
>
> Oklahoma law gives you the right to buy Uninsured Motorist coverage in the same amount as your bodily injury liability coverage. THE LAW REQUIRES [US] TO ADVISE YOU OF THIS VALUABLE RIGHT FOR THE PROTECTION OF YOU, MEMBERS OF YOUR FAMILY, AND OTHER PEOPLE WHO MAY BE HURT WHILE RIDING IN YOUR INSURED VEHICLE. YOU SHOULD SERIOUSLY CONSIDER BUYING THIS COVERAGE IN THE SAME AMOUNT AS YOUR LIABILITY INSURANCE COVERAGE LIMIT.... THE COST OF THIS COVERAGE IS SMALL COMPARED WITH THE BENEFITS!

36 O.S. Supp.1990 § 3636(H) (emphasis in original).

Plaintiffs assert that the language in subsection (H) which urges insureds to purchase UM coverage in the same amount as their liability coverage indicates a change in the legislative intent ascribed to § 3636 by our pre–1990 cases. We disagree. The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in a statute. *Ledbetter v. Oklahoma Alcoholic Bev. Laws Enforcement Comm'n,* 764 P.2d 172, 179 (Okla.1988). In so doing, "relevant provisions must be considered together, where possible, to give force and effect to each other." *Id.* Upon review of § 3636 in its entirety, we do not believe that the addition of subsection 3636(H) signified a change in the legislative intent previously ascribed to the statute.

The 1990 amendments did not alter in any significant respect the basic components of the statute as outlined above. The statute continues to require that every liability insurance policy contain a provision for UM coverage, that UM coverage be offered in amounts between the statutory minimum and the liability limits of the policy, and that the insured has the right to reject UM coverage in writing. We deduce that the newly enacted subsection (H) was created to accomplish two objectives. Primarily, subsection (H) mandates that a standardized written form "shall" be used by every insurer in connection with an offer of UM coverage. The particular form to be used is included in the provision. This legislative mandate appears to have been an appropriate response to the multitude of Oklahoma cases that addressed, under a pre–1990 version of § 3636, insurers' failure to offer UM coverage or obtain written rejection thereof. Subsection (H) also has the objective of encouraging insureds, via the mandatory form, to purchase UM coverage in the same amount as their bodily injury liability limits. In short, the amendment mandates the use of a standardized form and encourages the purchase of maximum UM coverage. Encouragement and mandate are

two entirely different things. Neither the pre–1990 nor amended versions of § 3636 dictate the result plaintiffs seek here.

In his separate opinion in *State Farm Mut. Auto. Ins. Co. v. Wendt,* 708 P.2d 581 (Okla.1985), Justice Opala described the purpose of § 3636 as it existed in 1981. We believe that his interpretation applies with equal force to the version of § 3636 in effect today:

> The UM statute does indeed contemplate that insureds may need additional coverage. This is doubtless why insurance companies are required to offer increased limits of liability.... If *no* UM coverage at all is desired, named insureds have *the right to reject it* in writing. UM protection is, then, *only conditionally mandated.* Its effectiveness as a public benefit measure is initially controlled by actions of the named insured of the policy..

> While the *general public* is shielded against financially irresponsible motorists by the public liability coverage that is mandated by the Financial Responsibility Act [47 O.S. § 7–204], the UM statute is designed to compel insurers to provide protection only for that insured who wishes not to reject the *minimum protection* against loss occasioned by an uninsured motorist. In short, the former act *commands vehicle owners* to maintain *public liability* protection, while the latter act—*a mandate to insurers*—directs that, absent the insured's written rejection, an *automobile policy* must *include minimum UM coverage.* The *lone,* though doubtless the *most revealing,* nexus between the two enactments is found in the mention made in § 3636(B) of the *minimum amount* of liability coverage that is mandated by the financial responsibility law. This reference plainly demonstrates a legislative intent to confine the public policy mandate for the statutory UM coverage level to no more than the minimum amount of insurance prescribed by law for public liability protection.

> [*Wendt,* 708 P.2d at 588 (Opala, J., concurring in part and dissenting in part) (emphasis in original, footnotes omitted).]

An insurance coverage contract required by § 3636 must be liberally construed in favor of the object to be accomplished. *State Farm Auto. Ins. Co. v. Greer,* 777 P.2d 941, 942 (Okla.1989). However, once it appears that the legislative purpose of § 3636 has been served, the statute's mandate is satisfied. *Moser v. Liberty Mut. Ins. Co.,* 731 P.2d 406, 409 (Okla.1986). *See also Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc.,* 747 P.2d 947, 953 (Okla.1987). "Consequently, freedom-of-contract principles control as to any vehicle coverage in excess of that required by statute." *Equity Mut.,* 747 P.2d at 953 (footnote omitted, emphasis in original).

As previously stated, the legislative intent underlying § 3636 is that every automobile liability insurance policy issued in this state have a statutory minimum of uninsured motorist coverage unless that minimum amount is rejected in writing. That objective was not altered by the 1990 amendments to the statute. Where an insurer fails to offer in writing or obtain a written rejection of UM coverage such that UM coverage is imputed to an insured's policy as a matter of law, we hold that the mandate of § 3636 is satisfied by imputation of the minimum limits of UM coverage required by statute. To impute a higher amount of UM coverage would go beyond the mandate of § 3636.

. . . .

In the present case National Union, in violation of § 3636, failed to offer or secure a written rejection of UM coverage after National Gypsum effectuated a material change in its insurance policy. Thus, UM coverage was imputed to the policy as a matter of law. The amount of the imputed coverage is dictated by 36 O.S. Supp.1990 § 3636(B) and 47 O.S.1991 § 7–204(a) and equals the statutory minimum of UM coverage prescribed by law for public liability protection: $10,000.00 per person and $20,000.00 per accident.

*May,* 918 P.2d at 45–49 (footnotes omitted).

For the reasons given above, the judgment of the district court is **AFFIRMED.**